Shearer, C. J.
This is an action prosecuted by the state of Ohio, upon the relation of DeWitt C. Jones, a tax payer, against the board of county commissioners, the auditor, the treasurer and the coroner of Franklin county to enjoin the allowance and payment out of the treasury of said county of certain fees and charges of said coroner for his official services in and about an inquest held upon the dead body of one Richard Olaprood, who came to his death on the 5th of September, 1897, in a street fight with one ’ George Robinson, in the presence of a large number of spectators,
Substantially, the grounds upon which the injunction is demanded are that the inquest was unwarranted and illegal because the body of Olaprood was not “found” under circumstances creating doubt or uncertainty as to whether he came to his death by violence, nor as to how or by what means or by whose hand he came to his death; thar said killing was not a case which, within section 1221, Revised Statutes, authorized an inquest; that such inquest was un *505 .necessary and ineffectual for any purpose contemplated by law, and a wanton assumption of power by the coroner in •order to obtain money from the county treasury in fraud of the rights of the relator and of the public,
The defendants, by their answer, assert the legality of the ■action of the coroner, and aver that at the time of the killing of Olaprood he, the coroner, was absent from the city .of Columbus on official business; that upon his return he was informed of the killing and went to the place where the homicide occurred, and learned that the body had been removed to the morgue; that he repaired to the morgue and found the dead body which bore evidence of having come to its death by violence. Meantime thd witnesses of the killing had dispersed and gone; that he thereupon caused subpoenas for witnesses to be issued, and held an inquest, and ■filed his report as required by law.
Defendants further allege that the, condition of the body, and the facts surrounding the death, were such that the -ends of justice required that an inquest be held for the purpose of determining the cause of the death of the deceased, as well as the manner in which the violence was inflicted and the person or persons by whoiq the death was caused; and that defendants in all things in the premises acted in .good faith; that the fees charged are reasonable and in accordance with the statute,
It is further alleged that said coroner had no knowledge •or information as to the cause of said death except as he -derived it from said inquest.
- The averments of the answer above- recited are controverted by the reply.
The court below granted a perpetual injunction. The ■defendants appeal, and the cause is submitted to us upon the pleadings and certain affidavits and other documents -eonstituting part of the report of-the inquest.
The facts as disclosed by the .evidence are that on Sunday *506 the 5th of September, 1897, one George Robinson and Richard Olaprood engaged in a fight in Court Alley in the city of Oolumbus, and Olaprood was fatally stabbed by Robinson, dying instantly. Quite a large number of people were present during the broil and saw Olaprood fall dead. Shortly after the killing the police appeared, arrested Robinson, and took him to the city prison and the dead body to the morgue.
Later in the day the coroner, who had been absent from the city, returned and was told that a^man had been killed in Court Alley. He went to the place and found the body had been removed and Robinson arrested. He then went to the morgue, viewed the body which showed evidence of death by violence, caused a post-mortem examination to be made, and held an inquest. A large number of witnesses were examined, and it was found that the cause of the death was a stab in the heart inflicted by Robinson.
It is contended on behalf of the relator that the facts stated did not authorize the coroner to hold an inquest; that the holding of the inquest was an abuse of power, and that the payment of fees therefor would-be a fraud upon the relator and the public.
To resolve this question requires a construction of section 1221, Revised Statutes, which provides that “when information is given to any coroner, that the body of a person whose death is supposed to have been caused by violence, has been found within his county, he shall appear forthwith at the place where such body is, shall issue subpoenas for such witnesses as he deems necessary, and administer to them the usual oath, and proceed to inquire how the deceased came to his death; if by violence from any other person or persons, by whom, whether as principals or accessories before or after the fact, together with all the circumstances relating thereto” etc. This section further pro'vides^that the testimony shall be reduced to writing, sub *507 scribed by the witnesses, and with the finding, etc. returned to the clerk of the court of common pleas. That the coroner,if he deems necessary, shall hold the witnesses to bail for their appearance at the court of common pleas, or, in default of bail, commit them to jail.
By section 1222 he is required to arrest the party found to have caused the death, if present, or 'if not present, to inform a justice of the peace and-the prosecuting attorney of the facts found, in order that the slayer may be dealt with immediately according to law.
The coronial office is of ancient origin, and its duties, while they have undergone some changes, are substantially the same as they were under the English common law. These duties are in many respects judicial, and their exercise, except in case of gross abuse, should not be interfered with.
Of course, it is not in every case of death from unknown causes that the coroner would be authorized to hold ah inquest; but if he knows,or has reasonable ground to believe, the death was the result of violence, or unlawful means, the coroner not only may, but is required to, hold an inquest. Violence, in the sense used in the statute, means force unlawfully exercised, as distinguished from mere accident or casualty. See Anderson’s Law Die. 1091. Also Lancaster Co. v. Holyoke, 21 L. R. A., 394 and notes.
The report of Muzzy v. The Commissioners of Hamilton Co., 2 West. Law Jour., 426, cited by counsel for the relator, is not official. It is a- mere “editorial note.” And we are not inclined, for reasons stated further on, to accept the editorial opinion of what the court in fact decided. It may be that the coroner “has no power to hold an inquest except in cases where the .cause of the death is'unknown”; but such holding, it seems to us, ignores a *508 very important duty imposed upon the coroner aside from determining the cause of the death, namely, the securing and preservation of the evidence of the crime while the facts are recent and the circumstances unchanged; also the securing of the attendance of witnessses before the grand jury. These duties are specially enjoined by law upon the coroner, and, if omitted, in many cases the state would be unable successfully to prosecute the guilty party.
It was said by Mercur, J. in Lancaster Co. v. Mishler, 100 Pa. St., 627, “that the duty of a coroner to hold an inquest rests on sound reason — nn that reason which is the life of the law. It is not a power to be exercised capriciously and arbitrarily and against all reason. The object of the inquest is to seek information and obtain and secure evidence in case of death by violence or other undue means. If there be reasonable ground to suppose it to be so caused, it becomes the duty of the coroner to act. If there be no reasonable ground to suspect that the death was not a natural one, it is a perversion of the whole spirit of the law to compel the county to pay him for such services.”
In that case the deceased died at an advanced age, at home, surrounded by his family and having been attended •during his illness by a regular practicing physician; his death was natural, and there was nothing suspicious, sudden ■or extraordinary about it.
We are, therefore, of opinion that where a person has come to his death by violence, as hereinbefore defined, whether in the presence of third persons or not, it is the duty of the coroner to hold an inquest, not only to ascertain the cause of the death, but whether a crime has been committed, who the perpetrator is, and to secure and preserve the evidence to the end that justice may not be defeated,
The word “supposed” in the statute does not necessarily imply doubt, uncertainty or ignorance of the cause *509 of the death.' It is broad enough to include both suspicion and knowledge. If the coroner either knows or suspectb the death to have been by violence, he may act.
We are not Impressed with the contention that the word “found,” as used in sec. 1221, is to be understood in the restricted sense"of's“discovered”, or “found by accident or search,” but rather^in the broader sense of being' present within the coroner’s jurisdiction,
A dead body^may'be discovered within the county by accident, its existence"not previously having been suspected; it may be discovered by search — its existence being known, but its whereabouts unknown; it may have been struck dead, as in this case, in the presence of a multitude, and the assailant may be known. In all such cases, the body is “found”. In'Illinois “found” is treated as synonymous with “lying”.' Rev St. Ills., 1883.
A person may"die in his own home, surrounded by his friends, and undeNcircumstances which indicate a natural death, He is"jburied in the public cemetery on the family lot, and his grave is marked with his' name and the date of his death. Subsequently circumstances may give rise to the suspicion of poisoning, or other^foul play, as the cause of his death. Can^the'coroner exhume the body and hold an inquest thereon? The^answer is “No”, if the contention of the relator is sound; for the body is not “found”. Its existence and whereabouts are known; it died in the presence of friends, and was^buried by them, and the cause of the death was supposed to^be “known”. But will it be claimed that under the circumstances just stated the coroner could not lawfully!¡hold an inquest? It will not do to say that he is without power'to^act unless the dead body is “found” in the sense insistednjpon^by the relator. That is not the test; neither would the^ends of justice be subserved by such interpretation of the statute. If knowledge comes to the coroner thaNthere is "a dead body within bis jurisdiction *510 which there is reason to believe came to its death by violence, as distinguished from mere accident or casualty, he is authorized to hold an inquest thereon, not only for the purpose of determining the cause of death, but to discover the guilty party, if any, and to ascertain and preserve the evidence, and to take the steps pointed out by the law to secure the attendance of the witnesses in court.
Mr. Dillon, and George Jones, for Relator.
Dyer & Williams, for Defendants.
The coroner must act in good faith — not capriciously or arbitrarily. He may not act where there is no ground to suspect violence was the cause of the death.
We find no cause to doubt the good faith of the coroner in this case, and think his action not only was justified by the circumstances, but was required by the law.
Injunction dissolved/ and petition dismissed.